UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA HEMSEN,

      Plaintiff,

    v.                                    CASE NO. 8:05-CV-622-T-MAP

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.
_____/

**<u>ORDER</u>**

Pursuant to 42 U.S.C. § 405(g), the Plaintiff seeks review of the Commissioner's decision denying her Disability Insurance Benefits ("DIB").[1] Essentially, Plaintiff argues the Administrative Law Judge ("ALJ") erred in 1) his residual functional capacity assessment; 2) finding her capable of performing past relevant work after developing a seizure condition; 3) finding her capable of lifting up to twenty pounds and standing and/or walking up to six hours of an eight hour workday; and 4) assessing her credibility with respect to her memory loss and medication side effects. After considering the record, I find that the ALJ incorrectly applied the regulations; moreover, he failed to adequately address the issues identified by the Appeals Council on remand and his decision is not supported by substantial evidence.  Accordingly, the case is remanded with instructions to award benefits with an onset date of August 12, 1994.

---

[1] The parties have consented to proceed before me pursuant to 28 U.S.C. § 636(c) (doc. 10).

*Background*

Plaintiff, who has a high school education and work experience as a secretary and administrative assistant, alleges she became disabled on February 28, 1991, two weeks before her fifty-second birthday, due to epilepsy and associated memory loss, impaired concentration, fatigue, and side effects from medications.  She was insured for disability benefits purposes through December 31, 1996, requiring she prove disability entitlement on or before that date.  She first filed for disability benefits on June 6, 1995, and after benefits were denied at the administrative level (R. 15-19), she filed suit in United States District Court in Connecticut.  That court remanded the case to the Commissioner (R. 590-612) for further consideration of Plaintiff's credibility with regard to her subjective complaints and on April 8, 2000, the Appeals Council vacated the ALJ's decision and ordered a rehearing (R. 613-14).  After the rehearing, the ALJ issued a decision finding Plaintiff not disabled and capable of performing work in the national economy (R. 767).  However, on appeal the Appeals Council again found the ALJ's decision insufficient regarding Plaintiff's credibility and her ability to perform medium exertional capacity work (R. 783).  Upon remand, the ALJ held a third hearing and concluded that she was not disabled and could return to her past work as a secretary or administrative assistant (R. 555).  The Appeals Council denied review and the Plaintiff filed an appeal to this court.  The case is now ripe for review.

*Standard of Review*

To be entitled to SSI or disability insurance benefits, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 42 U.S.C. § 423(d)(1)(A).  A

2

"physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a).  Under this process, the Commissioner must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520.  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. § 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists.  *See* 42 U.S.C. § 405(g); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064 (11th Cir. 1994). The Court may not

reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he/she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

*Discussion*

In 1999, the United States District Court for the District of Connecticut reversed and remanded the Plaintiff's case because the ALJ failed to evaluate her subjective complaints before concluding she was not credible, contrary to the requirements of SSR 96-7p. *See* R. 611-12. On remand, however, the ALJ again neglected to properly address Plaintiff's subjective complaints (R. 759) and the Appeals Council, citing to SSR 96-7p and 20 C.F.R. § 404.1529, remanded for another hearing before the ALJ (R. 781). Now, after a third hearing, the ALJ's new decision again fails to consider her subjective complaints despite the district court's and appeals council's mandates to do so nearly seven years ago.

In assessing Plaintiff's credibility, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529. "Objective evidence" means medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. § 404.1528. "Other evidence," as that term is used here, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. § 404.1512(b)(2)-(6). SSR 96-7p, promulgated to clarify the requirements

4

of 20 CFR § 404.1529, requires the ALJ to carefully consider subjective symptoms with the rest of

the relevant evidence in the record in reaching a conclusion about a claimant's credibility.   The

ruling requires the ALJ to "consider the entire record, including the objective medical evidence, the

individual's own statements about symptoms, statements and other information provided by treating

or examining physicians or psychologists and other persons about the symptoms and how they affect

the individual, and any other relevant evidence in the case record."   Importantly, the ruling states:

> It is in "not sufficient for the adjudicator to make a single, conclusory statement that
> 'the individual's allegations have been considered' or that 'the allegations are (or are
> not) credible.   It is also not enough for the adjudicator simply to recite the factors
> that are described in the regulations for evaluating symptoms.   The determination or
> decision must contain specific reasons for the finding on credibility, supported by the
> evidence in the case record, and must be sufficiently specific to make clear to the
> individual and to any subsequent reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that weight.

SSR 96-7p requires the ALJ to consider medical signs and laboratory findings, diagnosis, prognosis,

and medical opinions from treating and examining physicians or psychologists, and statements and

reports from Plaintiff, treating or examining physicians or psychologists and other persons about the

Plaintiff's medical history, treatment and response, prior work record and efforts to work, daily

activities, and other information concerning the Plaintiff's symptoms and how the symptoms affect

the Plaintiff's ability to work. The Eleventh Circuit pain standard incorporates this scheme by

requiring: (1) evidence of an underlying medical condition and either (a) objective medical evidence

that confirms the severity of the alleged pain arising from that condition or (b) that the objectively

determined medical condition is of such a severity that it can be reasonably expected to give rise to

the alleged pain. *Foote v. Chater,* 67 F.3d 1553, 1560-61 (11th Cir. 1995); *Landry v. Heckler*, 782

F.2d 1551, 1553 (11th Cir. 1986).   While commonly called the "pain standard," this test applies to

all subjective symptoms, including fatigue and memory loss. *Holt v. Sullivan*, 921 F.2d 1221 (11th

Cir. 1991); 20 CFR § 401.1529.

At the first hearing on September 24, 1996, Plaintiff testified that she stopped working in 1991 as suggested by her doctor because "petit mal seizures" prevented her from functioning at her job.  Her condition improved with anti-seizure medication, but she began experiencing grand mal seizures in 1994 after changing her anti-seizure medication (R. 34).  Plaintiff's seizure activity necessitated hospitalization from August 1994 through January 1995 (R 36, 232).  After re-stabilizing, she attempted two jobs in 1994 as a receptionist, but quit after one week because she got phone numbers mixed up and lost calls (R. 32-33).  Plaintiff explained that her memory problems are worse than her seizures.  She has difficulty following conversations and becomes  frustrated trying to express herself.

As she testified during her September 1996 hearing: "Someone [is] explaining something to me, and I'm trying hard to concentrate on what they're saying, and I am on the first sentence, and they're already four paragraphs ahead of me … (R. 36).  She also has trouble taking phone messages, following recipes she made in the past without even referring to a recipe, and reading books, as she finds herself rereading the same chapters over and over since she cannot recall what she has already read (R. 37).  Her treating physician (Spencer) explained to her that her memory and concentration were not expected to improve because her "brain was hurt" by her seizure activity (R. 36).  Plaintiff's husband testified that she had lost her typing skills and could barely use WordPerfect, a computer program she had been highly proficient at in 1991 before her seizures.  In addition to her inability to perform old tasks and skills, Plaintiff's husband explained that she was unable to learn new skills such as Lotus spreadsheets, stating he had attempted to teach her many times taking small steps to get her to understand to no avail (R. 46).

6

Plaintiff reiterated her cognitive problems at a second hearing in November 2001. Plaintiff testified she has difficulty keeping up with conversations, understanding what she reads, reading instructions for recipes and computer programs, and recalling things like where she has parked her car, whether she has been to a particular restaurant before, or whether she has mailed a birthday card to a relative. (R. 836-843). She is unable to remember how to do tasks such as programming the VCR, operating the pool, or sewing on her machine even though she sewed her children's clothes for years. Instruction books on how to operate these machines are useless to her since she cannot remember or understand what she reads (R. 843-844). She tried volunteering at the Red Cross as an office assistant earlier that year, but quit because she was "getting everything messed up" (R. 850). Plaintiff's husband testified that his wife types proposals for his computer consulting business so long as he sets up the documents with headers and makes tables and charts himself. Due to short term memory loss from her seizure activity, Plaintiff cannot comprehend instructions and is unable to learn new skills such as opening email attachments even though he has shown her how to do so numerous times (R. 859).

In August 2003, Plaintiff appeared before the ALJ for her third hearing; again she testified about the same cognitive impairments (R. 908). She testified her ability to understand and concentrate had worsened over the years and her medications cause extreme fatigue (R. 911). Her husband testified that he no longer allows his wife to answer the phone because she was not accurately relaying messages to him (R. 916). He explained that the seizures and the medications she takes to control them "grossly affect" his wife's cognitive skills, including her memory, ability to reason, ability to keep information straight, and cause her to be in a fairly continual state of confusion (R. 918). Although the ALJ called upon a medical expert per the Appeals Council's

directive, the ALJ noted during the expert's testimony that "the expertise of the doctor in internal medicine would allow discussions regarding your first line of questions regarding seizures and things of that nature…but as far as any mental, psychological, psychiatric, cognitive issues… I think may just be beyond the level of the scope of his expertise" (R. 944).

The objective medical evidence and other record evidence support the Plaintiff's subjective complaints of memory loss and cognitive deficits.  *See* 20 C.F.R. § 404.1529; SSR 96-7p.  The medical records show that after several consecutive, prolonged hospital stays from August 1994 to January 1995, characterized by long periods of  unresponsiveness, staring spells and obtundation, Plaintiff's experienced significant memory loss and cognitive deficits.  Plaintiff testified that the problems she had with memory and concentration before her 1994 seizures worsened, and both treating and examining doctors agree.  For example, on  August 7, 1995, an examining consultant stated Plaintiff has difficulty with memory and concentration (R. 466).  And, her treating neurologist, Dr. Spencer, noted the same cognition and memory problems in November 1995 and September 1996, opining Plaintiff was unable to learn new tasks (R. 481, 513).  Even the medical expert retained by the ALJ who appeared at the most recent hearing testified that Plaintiff was a little less adept at cognition that she was in 1994 (R. 948).

Because the objective medical evidence and other record evidence support the Plaintiff's subjective complaints, I find the ALJ improperly discounted her and her husband's testimony and the treating physicians' opinions regarding the serious and debilitating effects of her seizures, namely her memory and cognition problems.  *See generally Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Foote v. Chater*, 67 F.3d 1553, 1562-63 (11th Cir. 1995) (requiring ALJ to articulate explicit and adequate reasons for discrediting claimant's subjective testimony and holding that

failure to do so requires, as a matter of law, that the testimony be accepted as true).  Despite the Appeals Council's clear directive to give further consideration to Plaintiff's subjective complaints, and to obtain medical expert opinion if necessary to determine the nature and severity of her impairments and functional limitations, the ALJ barely noted Plaintiff's memory and cognition deficits, and called on a medical expert who was not qualified to address these concerns (R. 944).  In his decision, the ALJ states only that Plaintiff had a memory/ cognition problem since 1985, and that the medical expert opined that it was only a mild condition since she was able to return to an important job in 1985 (R. 553).  Such brevity is inadequate.  *See* 20 CFR § 404.1529, SSR 96-7p.

Ordinarily, I would remand the matter for further administrative proceedings, particularly since the Commissioner denied benefits at step four of the sequential analysis.  Nonetheless, I find a remand for further hearings inappropriate for two reasons.  First, the administrative record already supports a findings of disability at step five of the sequential analysis.  Second, the Plaintiff has litigated this matter administratively for eleven years.  At the first administrative hearing, the ALJ posed a hypothetical to the vocational expert, asking the VE to assume an individual with advanced age and a twelfth grade education and prior work experience as an administrative assistant and secretary who is able to sit for an hour at a time and then would have to stand up for five minutes or so before resuming sitting, alternatively throughout the eight hour work day and use their hands and fingers without significant restriction who has difficulty concentrating to the degree that she is unable to read or assimilate the average newspaper article.  The VE responded that in her opinion an individual with these restrictions would not be able to perform her past relevant work and would not be able to return to any jobs due to her deficits in concentration and pace (R. 50-52).  In light of this testimony, I find that the overwhelming evidence establishes that Plaintiff is not able to

perform and sustain work related activities sufficient to allow her to perform any level of full time work in the national economy.  Her entitlement to benefits is clear as there is no basis on which an ALJ, crediting Plaintiff's subjective complaints in context of the record evidence as required by the regulations, could conclude that Plaintiff is anything but disabled.

Two different ALJs have held a total of three administrative hearings and issued three written decisions.  The first time the ALJ determined Plaintiff could perform her past work, the second time the ALJ opined she could not perform her past work but could do other work in the national economy, and the third time the ALJ once again concluded she could perform her past work as a secretary or administrative assistant.  On each occasion the administrative record was essentially the same, and on each time the ALJ failed to adequately address the Plaintiff's memory and concentration deficits irrespective of the Appeals Council's or district court's instructions to do so.  The Commissioner should not be entitled "to adjudicate a case 'ad infinitum until it correctly applies the correct legal standard and gather evidence to support its conclusion.'" *Sisco v. United States,* 10 F.3d 739, 745 (10th Cir. 1993).  *See also Davis v. Shalala*, 985 F. 2d 528, 534 (11th Cir. 1993) (court may remand for entry of an order awarding disability benefits where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt; 42 U.S.C. § 405(g) (court has "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing").  Fairness demands that the review process end at some point.  After reviewing the record evidence, I find that there is substantial evidence of Plaintiff's disability beginning August 12, 1994, and little or no evidence to support the Commissioner's position of no

disability.

While Plaintiff alleges a disability onset date of February 28, 1991, I find the record evidence suggests otherwise. Although Plaintiff left her employment after suffering from seizures in 1991, she testified and the medical records show that she improved with anti-seizure medication. Unfortunately in August 1994 she discontinued a medication that had stabilized her (Felbatol), as the medication was causing life-threatening aplastic anemia in some people (R. 379). After the medication change she experienced significant seizure activity in 1994, requiring hospitalization for nearly five months. Although her seizures stopped, she remains at risk for more seizures and the effects of her seizures, as explained above, are lasting. Accordingly, I find Plaintiff's disability onset date is August 12, 1994, the date her seizure activity first required hospitalization (R. 411-14). Accordingly, the case is remanded to the ALJ for an award benefits.

*Conclusion*

For the reasons stated, it is hereby

ORDERED:

1.     That judgment is entered for Plaintiff.

2.     The case is remanded for the reasons set forth herein for an award of benefits with a disability onset date of August 12, 1994.

IT IS SO ORDERED in chambers at Tampa, Florida on this 21st day of September, 2006.


MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

11